IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Focused Systems, Inc., | ) | |
| | ) | C.A. No. 6:10-2899-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Aerotek, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Aerotek, Inc.'s ("Aerotek") motion for summary judgment. For the reasons below, the court grants the motion for summary judgment.

**I. FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Focused Systems, Inc. ("Focused Systems") brought this action in state court alleging a claim for tortious interference with a contract against Aerotek. Aerotek removed the action to this court. Both Aerotek and Focused Systems are staffing companies that serve, in part, BMW Manufacturing, LLC ("BMW"). On August 8, 2010, Sandra Cunningham ("Cunningham") of BMW contacted Chad Martin ("Martin"), an Aerotek account executive, via email informing him that some individuals were "interested in transitioning from their existing staffing provider to an alternate company. (Def. Mem. Supp. Summ. J. Ex. 1 (Martin Aff. ¶ 4 & Ex. A).) Cunningham further stated that "[a]t the contractors request, BMW MC is interested in assisting with the identification of an alternate staffing provider which is able to offer a comparable compensation and benefit package as exist[s] currently with each individual." (Id. Ex. 1 (Martin Aff. Ex. A).) In addition, Cunningham requested that Martin advise whether he

1

was interested in speaking to the interested individuals.  (Id. Ex. 1 (Martin Aff. Ex. A).)  The next day, Martin replied to the email indicating that he was willing to speak with the interested individuals about possibly working for Aerotek.  (Id. Ex. 1 (Martin Aff. ¶ 5).)  Cunningham responded that she would provide Martin's contact information to the individuals and they would "decide if they want[ed] to contact" him.  (Id. Ex. 1 (Martin Aff. Ex. C).)   Daniel Burgess ("Burgess") and Stephen McComas ("McComas"), who were Focused Systems employees at the time, separately contacted Martin.  According to Burgess and McComas, they had separately contacted several other staffing companies regarding employment prior to contacting Martin.  (Def. Mem. Supp. Summ. J. Ex. 2 (Burgess Aff. ¶ 8) & Ex. 3 (McComas Aff. ¶ 7).)   Burgess first contacted Martin by email on August 12, 2010, regarding employment with Aerotek.  Burgess wrote

> My name is Daniel Burgess, and am [sic] an IT contractor at BMW.  I was given your company's information by Reco Harpe, after the company that I was employed with did not sign the Agile 1 contract.  So now, with authorization from BMW and Agile 1, I am able to transition my assignment at BMW to a new contracting company.  I would like to discuss what your company has to offer in terms of employment.  Feel free to contact me, although I am working nights this week, so may not answer or respond quickly – I will respond as soon as possible.

(Id. Ex. 2 (Burgess Aff. Ex. B).)  On August 16, 2010, McComas first contacted Martin by email, stating:

> My name is Stephen McComas and I am a contractor working at BMW.  I was told that BMW would contact you about me looking for another contractor company.  Below is my current information and I was wondering if you could make an offer to pick me up as part of your team.

(Id. Ex. 3 (McComas Aff. Ex. B).)  Aerotek offered to employ McComas and Burgess in the same position with BMW as they worked for Focused Systems, and they were hired by Aerotek

on August 29, 2010. (Id. Ex. 1 (Martin Aff. ¶ 11).) McComas and Burgess had employment contracts with Focused Systems. (Pl. Mem. Opp'n Summ. J. Ex. A (Burgess/Focused Systems Contract) & Ex. B (McComas/Focused Systems Contract).) However, Martin states that he "did not become aware that Burgess or McComas had contracts with Focused Systems until after those employees began working for Aerotek." (Def. Mem. Supp. Summ. J. Ex. 1 (Martin Aff. ¶ 14).)

Aerotek filed a motion for summary judgment on March 9, 2011. Focused Systems' memorandum in opposition was filed March 23, 2011. Aerotek filed a reply on June 1, 2011. This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. Further, a litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

### B. Tortious Interference with a Contract

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." Camp v. Springs Mortgage Corp., 426 S.E.2d 304, 305 (S.C. 1993). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." Threlkeld v. Christoph, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984). "[T]he alleged act of interference must influence, induce, or coerce one of the parties to the contract to abandon the relationship or breach the contract. Bocook Outdoor Media, Inc. v. Summey Outdoor Adver., Inc., 363 S.E.2d 390, 394 (S.C. Ct. App. 1987), overruled on other grounds by, O'Neal v. Bowles, 431 S.E.2d 555 (S.C. 1993). In order to maintain a cause of action for interference with a contract that is terminable at will, "[t]he plaintiff must show that, but for the interference, the contractual relationship would have continued." Id.

### 1. The Existence of a Valid Contract

McComas and Burgess were employed at will pursuant to an employment contract with Focused Systems at the time Aerotek hired them.[1] Focused Systems alleges that McComas and Burgess breached the noncompetition clause contained in Burgess' and McComas' employment

---

[1] McComas' and Burgess' employment contracts with Focused Systems provided that Focused Systems had "the right to terminate . . . employment . . . with or without cause at any time." (Pl. Mem. Opp'n Summ. J. Ex. A (Burgess Employment Contract) & Ex. B (McComas Employment Contract).)

4

contracts with Focused Systems.[2]  Therefore, the court finds that, for purposes of summary judgment, Focused Systems has satisfied the first element.

### 2. The Wrongdoer's Knowledge of the Contract

There is no evidence that Martin was aware of the existence of a valid contract that prohibited McComas and Burgess from seeking employment with Aerotek.  Martin states that he "did not become aware that Burgess or McComas had contracts with Focused Systems until after those employees began working for Aerotek."  (Def. Mem. Supp. Summ. J. Ex. 1 (Martin Aff. ¶ 14).)  Focused Systems argues that Aerotek was aware that Burgess and McComas were contractors who were interested in "transitioning from their existing staffing provider."  (Pl. Mem. Opp'n Summ. J. 3 Ex. C (Cunningham Email).)  Thus, Focused Systems submits that there "is no dispute that [Aerotek] was aware that McComas and Burgess were under contract with a different staffing company . . . ."  (Id. at 3.)  Further, Focused Systems submits that Aerotek's contracts also contain a noncompetition clause.  (Id. at 4.)  However, there is no evidence that Aerotek was aware of the actual existence of a valid contract.  Further, the probability of the existence of a contract is insufficient to establish that Aerotek had knowledge of the existence of a valid contract with respect to McComas and Burgess.  Therefore, Focused Systems' claim for tortious interference with a contract fails.  Further, even if this element were satisfied, Focused Systems has failed to raise any genuine issue of material fact with respect to the remaining elements as set forth below.

---

[2]In its reply, Aerotek challenges the validity of the noncompetition clause in Burgess' and McComas' contracts with Focused Systems.  However, the court declines to address this argument because even assuming the clause is valid, Focused Systems' claim fails as set forth below.  (Reply, generally.)

### 3.  Intentional Procurement of Its Breach

There is no evidence that Aerotek intentionally procured the breach of Burgess' and McComas' employment contracts with Focused Systems.  The only evidence in this case is that BMW approached Aerotek through Martin to inquire about employment for certain individuals. McComas and Burgess separately contacted Martin regarding employment and requested that Aerotek make an offer for employment.  (Def. Mem. Supp. Summ. J. Ex. 2 (Burgess Aff. Ex. B) & Ex. 3 (McComas Aff. Ex. B).)  McComas and Burgess have stated in their affidavits that they would not have remained with Focused Systems.  (Id. Ex. 2 (Burgess Aff. ¶ 9) & Ex. 3 (McComas Aff. ¶ 8).)   McComas and Burgess had already spoken with other staffing companies and were actively looking for new employment.   (Id. Ex. 2 (Burgess Aff. ¶ 8) & Ex. 3 (McComas Aff. ¶ 7).)  In order to maintain a cause of action for interference with a contract that is terminable at will, "[t]he plaintiff must show that, but for the interference, the contractual relationship would have continued."  Bocook Outdoor Media, 363 S.E.2d at 394.

Focused Systems argues that there is a "reasonable inference from the evidence" that Burgess and McComas' contractual relationship with Focused Systems would have continued "because neither McComas nor Burgess did leave Plaintiff, or his position at BMW until after each had negotiated with Defendant and had been offered a position with Defendant that would ensure his continued employment at BMW's facility without a break in pay."  (Pl. Mem. Opp'n Summ. J. 5.)  The court disagrees.  There is no evidence to counter McComas' and Burgess' statements that prior to contacting Martin, they had already decided to terminate their relationship with Focused Systems.  (Def. Mem. Supp. Summ. J. Ex. 2 (Burgess Aff. ¶ 8) & Ex. 3 (McComas Aff. ¶ 7).)  A review of the evidence reveals that Focused Systems had not signed

6

the Agile 1 contract with BMW, and as a result, Burgess and McComas were seeking a new employer. (Def. Mem. Supp. Summ. J Ex. 1 (Burgess Aff. Ex. A & Ex. B).) Further, there is absolutely no evidence that Aerotek influenced, induced, or coerced either McComas or Burgess to leave Focused Systems. Bocook Outdoor Media, 363 S.E.2d at 394. To the contrary, McComas and Burgess contacted Martin and actively sought out employment with Aerotek. Based on the foregoing, Focused Systems' claim fails.

### 4. Absence of Justification

Absence of justification is

> conduct that is carried out for an improper purpose, such as malice or spite, or through improper means, such as violence or intimidation. A party is justified, however, when acting in the advancement of its legitimate business interests or legal rights. Furthermore, as long as some legitimate purpose or right exists, the improper purpose must predominate in order to create liability.

BCD LLC v. BMW Mfg. Co., Nos. 08-1279, 08-1448, 2010 WL 64888, at *5 (4th Cir. Jan. 8, 2010) (unpublished) (internal citations omitted).

> Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship.

Duggin v. Adams, 360 S.E.2d 832, 837 (Va. 1987) (internal citations omitted), cited with approval in, Crandall Corp. v. Navistar Int'l Transp. Co., 395 S.E.2d 179, 180 (S.C. 1990). Focused Systems argues that Aerotek lacked justification because it was aware of the noncompetition clauses in McComas' and Burgess' contracts and "allowed time worked by Burgess while still employed by [Focused Systems] and before Burgess had entered into an

7

employment agreement with [Aerotek] to be submitted as time worked for" Aerotek. (Pl. Mem. Opp'n Summ. J. 5.) In addition, Focused Systems makes an ambiguous argument that in hiring McComas and Burgess, Aerotek breached the provisions of the "BMW Manufacturing Co., LLC Business Conduct and Ethics Policy," which provides that "Service contracts may not be entered into with former BMW Associates (either directly or indirectly) less than two years after their departure from the Company." (Id.) It does not appear that this policy is applicable in this case given that as pointed out by Aerotek, McComas and Burgess never left BMW. Likewise, the court finds that Aerotek's determination of Burgess' hours is not evidence of an improper purpose or improper means on the part of Aerotek. To the contrary, the change was made at the request of Burgess. On August 31, 2010, Burgess requested in an email to Martin that his start date be August 29, 2010, because "Agile 1 time sheet starts on Sunday, and I have time on that day - this makes Saturday the last day for time on previous company." (Id. Ex. L (August 31, 2010 Email).) Martin responded, "Yes, that is fine, sorry about that." (Id. Ex. L (August 31, 2010 Email).) Burgess' employment agreement with Aerotek reflects a start date of August 29, 2010. (Id. Ex. I (Burgess Employment Agreement).)

Further, Focused Systems alleges that Aerotek used "deceptive practices" because it knew "that another staffing company at BMW, had McComas and Burgess under contract at BMW" but "never inquired who the company was so that it could inquire about the current contract and its terms, including noncompetition language." (Pl. Mem. Opp'n Summ. J. 6.) The only conclusion that can be drawn from the evidence is that Aerotek advanced its legitimate business interests in offering to employ McComas and Burgess. BMW contacted Aerotek asking whether it would be interested in discussing employment with individuals that were actively seeking a

new employer. (Def. Mem. Supp. Summ. J. Ex. 1 (Martin Aff. Ex. A).) Burgess and McComas separately contacted Martin directly and an offer of employment was made and accepted by them. (Id. Ex. 1 (Martin Aff. ¶ 11) & Ex. 2 (Burgess Aff. ¶ 8) & Ex. 3 (McComas Aff. ¶ 7).) Focused Systems cites no authority for the proposition that Aerotek, a direct competitor of the other staffing companies that provide contractors to BMW, had a duty to determine whether McComas and Burgess were covered under a valid contract with the other staffing company, the name of the other staffing company, whether there was a noncompetition clause in effect, or anything else with respect to McComas and Burgess' employment with Focused Systems. This is not a situation where Aerotek sought out McComas and Burgess and coerced them away from their employment with Focused Systems. In sum, there is no evidence of improper means or improper purpose on the part of Aerotek. Moreover, even assuming that Aerotek had an improper purpose, it still could not be held liable because any improper purpose would not predominate over Aerotek's legitimate business purposes. BCD LLC, 2010 WL 64888, at *5. Based on the foregoing, Aerotek is entitled to summary judgment on Focused Systems' claim for tortious interference with a contract.

Therefore, it is

**ORDERED** that Aerotek's motion for summary judgment, docket number 26, is granted.

**IT IS SO ORDERED**.

                                              s/Henry M. Herlong, Jr.
                                              Senior United States District Judge

Greenville, South Carolina
June 2, 2011